Case number 25-5044, Cindy Buchanan, et al. v. Johnson & Johnson Consumer, Inc. Oral argument not to exceed 15 minutes per side. Richard Collins for the appellant, you may proceed. Good morning. I believe I reserved three minutes for rebuttal. Okay. And may it please the Court, allow me to turn first to a factual issue that occurred to me as I was reading these briefs. A couple of facts that I think the Court below overlooked when concluding that Cindy Buchanan failed to adduce sufficient evidence that the OGX shampoo and conditioner she was using contained this harmful compound, DMDM-Hydantoin. District Court states that the only evidence in this regard was a picture of the front of the OGX bottle. That's not true. Admittedly, though, the briefs don't do a really good job of pointing this out. But the deposition testimony from Cindy Buchanan, and this can be found on the record at Docket Entry 80-9. I believe it was Exhibit 9 to the Plaintiff's Summary Judgment Response. Page 116 of that deposition, Cindy Buchanan has asked What page? I'm sorry. Page 116 of Docket Entry 80-9. Unfortunately, I don't have a page ID number. I'll cut it out. I'll paste this on my notepad. But at page 116 of her deposition, she's asked When did you first learn that the OGX products you used contained DMDM-Hydantoin? Answer. After I read that article that my sister showed me, that's when I started going through everything that I was using and found that the conditioner contained that ingredient. Did you point this deposition testimony to the district court? I can't say specifically. The deposition was argued to the district court. The citations are I'm sorry, I didn't understand. You can't say specifically meaning no or yes? It doesn't appear that it was certainly before the court. Let me explain that a little bit. And I understand that the court does not have an obligation to go worm out, you know Yes. Frank Easterbrook said they're not pigs hunting for truffles. That's right. But this wouldn't have required it. The problem here is that I think it was assumed and taken for granted that she had read that product list. I mean, it's all over the deposition transcript. But more importantly, the issue My point is, right, the front of the bottle, clearly the picture is just the front of the bottle. And I've looked at that picture and it says nothing about this chemical compound. And in the brief to the district court, did you make the argument that, look, at page 116 I mean, this is a good argument. But at 116, she says, I looked at the ingredient list and it had BMDM. It was omitted. It should have been argued. Luckily But then we can't rely on it. Well, I think you can because there is an explanation. You cannot fault the plaintiff too much for this. Sure I can. You wrote the brief. It's your client. And it's right here. If you'll allow me. The issue, as it was framed before the district court, was really one of spoliation. And it was this question of, should we punish Cindy Buchanan for having thrown away these bottles and just taken a picture of the front and not the back of these bottles. And you should say, no, you shouldn't because it's irrelevant because it's in her deposition. Well, I believe that the argument is made. The citations are, the entire transcript was provided. The motion for spoliation sanctions is not before this court. It was pre-dermitted by this decision on summary judgment. And it would have come out one way or another. And of course, district courts, unlike state courts and even this court, don't have hearings in civil cases very often. And so I think it's unfair to fault a plaintiff too much when it comes to this particular issue. Here's what you said in your brief. After losing this hair, she used OGX shampoo and conditioner but cannot identify the ingredients of those products because she intentionally threw away the bottles. I think that's incorrect. I'm glad I didn't write the briefs. It's one of the perils of arguing a case that you didn't. But my point is, is not only did you not say it, you affirmatively disowned it. I understand, Your Honor, but I think where the line is being drawn there incorrectly is the shampoo bottle. She says, no, I don't recall it having HDM in it, but the conditioner did. And that's all borne out at 116. It says she used shampoo and conditioner and she threw away those bottles. She sure did. She sure did. But I'm not going to argue with the way the record presents itself. It does. But I'm letting this Court know that before the district court is a deposition transcript, which so clearly doesn't present this issue. I understand, but wait a minute. It seems really hard to fault a district court who's a lot busier than the rest of us for not going through and reading every deposition when it's not pointed to it. I understand that, Your Honor. And when it's affirmatively disowned. I'm not faulting Judge Varlin. He's one of the better ones in my opinion. I like Judge Varlin a lot and I think he's brilliant. But I'm just pointing out to this Court that that's an error. Not on his part, but it's a reason on de novo review to second guess that conclusion. Now, also, also. Let me tell you why I disagree and you can answer it. It's not because the lawyer below, whoever it was. I don't know. I haven't gone to look at the bottom of the brief. Whoever it was affirmatively said, she didn't know the ingredients. So that would even tell Judge Varlin, I don't need to read her deposition to find out because I know. Because the lawyer's representing, she doesn't know. Well, let me also just point out that Dr. Schwartz, the head of dermatology at Rutgers, who's a plaintiff's expert, his opinions were very much before the Court. And he clearly states, she followed the directions on the conditioner, which contained DMDM hydantoin, in which she would leave the conditioner in for five minutes before rinsing her hair. So there's enough here. And again, it was taken for granted, I think, that that was the case. Because this issue was, did she spoliate? Yeah, we lost the evidence. Should we punish her with an adverse inference? That was the issue. Now, turning to the other problem, which is this proximate cause question. I'll concede that in a complex products liability case like this, you need expert testimony. Do you agree? I'm a little bit confused about something. This is obviously a products case, but it seems to have some kind of toxic tortish aspects to it And normally you would have the causation question. There would be a general causation question and a specific causation question, right? So general causation would be, is this chemical capable of doing what you say it did? What is the evidence of general causation here? Is it just the expert report? No, Your Honor. I think there's plenty more. There is Schwartz's opinion. There's the FDA's conclusion, which is also cited here. But is there any toxicology, epidemiology, peer-reviewed studies? What are the reports that I would be looking for? There is a Johnson & Johnson's internal investigation. They studied 8,000 cases, complaints. The post-market report? Yes, Your Honor. And those cases, of course, predated the reformulation. And 20% experienced this problem. The FDA says and Schwartz says I thought 20% filed complaints. I believe 20% complained of those complaints. Of the problems. Had the clumping. Right, but we don't know if they experienced. We know 20% complained. We don't know if that's tied to DMDM because even this report you cite talks about it being tied to cancer, not hair loss. But Document Entry 74-1, which is this consumer investigative report, is dealing with the OGX brand. And if you read through those stories of those cases, they're complaining of this OGX, which had the DMDM. So there's that. And I think that the jury here is going to be charged, or should be. The Tennessee pattern instructions are like gospel in the state courts in Tennessee. They're very authoritative. And that's what would be read and it would be proffered here. This is aggravation of a pre-existing condition. And what the jury would be charged with is a plaintiff, and this is Tennessee pattern instruction section 14.14. A plaintiff with a pre-existing condition may recover damages only for any additional injury or harms often from the fault you may have found in this case. If you find that the defendant's fault aggravated plaintiff's pre-existing condition, you must apportion the amount of disability and pain between that caused by the pre-existing condition and that caused by the incident. If, however, you find that defendant's fault aggravated plaintiff's pre-existing condition and you find that plaintiff's pre-existing condition had caused plaintiff no harm, pain, or suffering before this incident, or if you find that the defendant's fault makes it impossible to apportion the amount of disability or pain that pre-existed the incident, then defendant is responsible for all harm caused by the incident, even though it is greater because of the pre-existing condition. We turn to this question of substantial factor. I very much disagree with the district court's conclusion that Tennessee law requires an expert in a product's case to say this is a substantial factor, that this product, this offensive product, this characteristic was a substantial factor in the injury. Again, that's the jury question, and that is what Tennessee Pattern Instruction Civil, Section 3.22 charges the jury with the task of deciding. Approximate cause. Two requirements to determine whether an act or omission was a legal cause of the injury or damage. One, the conduct must have been a substantial factor in bringing about the harm being complained of, and two, the harm giving rise to the action could have been reasonably foreseen or anticipated by a person of ordinary intelligence and care. So those are jury questions. Now, where do I think Judge Varlin got the idea that we have to have expert proof? Because it's certainly not in the decisional law that he cites for that proposition. What those cases talk about is the divide in Tennessee between products which we can prove are defective or unreasonably dangerous because of an ordinary consumer's expectations as to their safety and attributes, or complex products like a shampoo with formulas that require an expert to say, essentially, no reasonably prudent manufacturer's predictions. Can I ask you a threshold question? You agree that we have to apply these Tennessee standards, but you think that the district court applied them in the incorrect way. Correct. This court should reverse the district court and remand this case for trial. May it please the court. I think we just heard counsel admit that the Tennessee standards need to be applied, so I think that that takes care of the Erie issue, but I'm happy to answer questions about the Erie issue as well. Why, for example, because I'm curious about the substantial factor. Is that substantive or procedural? Substantial factor is undoubtedly part of the cause of action, yes. That's a substantive rule of law. I mean, there's a claim. You make a claim for products liability, and in order to prove causation... I mean, how you prove your claim is a matter of kind of federal law, right? I mean, I guess... I mean, I think substantial factor is probably substantive, but I guess it's not completely obvious to me, but I don't... I mean, and there's some other aspects of this that seem odd to me in terms of whether they're procedural or... I mean, I don't understand Tennessee to strictly apply Daubert. Is that right? Tennessee... They look to the factors, but they've said, we don't strictly apply Daubert, so... But 702 and Daubert are not at issue here at all because the court did not reach the 702 question. In fact, the court assumed that Dr. Schwartz's unreliable opinion would come in. I guess what I'm saying is there are certain aspects of expert witness law that Tennessee kind of applies as its own procedure that we wouldn't apply, right? Yes. I think that that's the case. Certainly under... If you have a question of reliability, is a person offering reliable expert testimony, that is a question of federal law under 702 and interpretive case law. But then why isn't whether or not you need expert testimony also a question of federal law? In other words, substantial factor, let's say, is part of the burden of proof, but how you prove substantial factor is a question of what's relevant evidence for that. I think because you look to what is a material fact, and materiality is defined by state law. And materiality is you have to have expert testimony, which we heard plaintiffs' counsel concede, and you have to have expert testimony that's certain because it's a federal standard under Rule 56 that you have to have a genuine issue of material facts. But then it would be... It's weird, right? Because to go back to Judge Nalbandian's example, Daubert is stricter than what Tennessee has. I agree, he conceded it, so maybe this is all about nothing. But Daubert, although he didn't in his brief, so it's kind of like the same thing that's happening with the other facts. But Daubert is a stricter standard than Tennessee applies, so you need the expert, but you're saying, it seems to me then it could be outcome determinative just Daubert in that regard. Well, it isn't here. It could be, but it isn't here because the district court never reached the 702 opinion. He said, let's take the opinion at face value, and it's still not enough. You agree in federal court on summary judgment, what you're allowed to consider is any admissible evidence, right? Any evidence. It doesn't have to be in the form, but you know the rule. Right, right. And so why couldn't... Let's say there was no expert, or in this case, close to no expert since he basically said it could be a factor. Why couldn't we consider the totality of the evidence and say, well, a reasonable jury from that evidence could make this conclusion? So under the totality of the evidence, you still have to have evidence that crosses the summary judgment standard, and they don't have it here. No, I agree with that. Okay, that's a different argument, and we can discuss that, but I guess, and I'd love your answer to that, but point one is in that totality, what you're saying is you have to have an expert, and what I'm saying is the rules of evidence don't require that. I see what you're saying, but I will say the MDL courts who have looked at this have consistently said that every jurisdiction in the country, all 53 states and territories, require expert testimony on complex cases, which counsel admitted is the case under Tennessee law, and I think there's a federal standard that also requires that because it certainly is... What's the federal standard? Well, if you look at the MDL case, they said certainly Rule 56 would say you can't have conclusory, you can't have speculative testimony, and a jury deciding a complex medical issue without any expert support would be conclusory, would be... Do you think you need an expert on both general and specific causation? If I establish that this product was capable of causing hair loss on specific causation, would proof of exposure be enough? No, absolutely not, because specific causation, particularly for a toxic tort, you can't rely on temporality alone. You have to have expert evidence. I mean, this is a complex issue. You can't walk into... This is a products liability case, though, right? So if I have a car that blows up, I don't have to prove specific causation, right, if I prove the defect? No, you do. Because I was in the car and it blew up. Well, it depends on the level of complexity. So I think if you look at the case law, you will see levels of complexity requiring expert testimony. If you have a car and a bomb... I agree, that all comes from state law. Right, it all comes from state law. But certainly you're never going to have a complex medical issue where you have a plaintiff offering general causation evidence that is completely unsupported by toxicology, by epidemiology, by nothing, but the district court said, you know what, I'm just going to assume that that comes in, I'm going to assume it's reliable, which it's not, but just assume that it is. You still need to have an expert link the specific injury that the plaintiff suffered, which is the exacerbation of pre-existing hair loss to total body hair loss from the use of half a bottle of shampoo and half a bottle of conditioner, when her doctor said that this was not caused by the use of the shampoo. And you still have to have that link from a... Assume you don't. Explain to us why you still win, because that's what you were getting to before I cut you off. Because under no circumstances have plaintiffs offered evidence of that specific causation link. What about the 20% or 19.6% complaints? Well, plaintiffs have broadly, broadly misinterpreted that. First of all, that is 20% of complaints, not 20% of usages. So, you know, you cannot take this... And the expert here considered that and said, no, I'm still not going to rule this product in. I am fully aware of the fact that 20% of the complaints deal with hair loss of some kind, not hair loss of the kind that the exacerbation that Mrs. Buchanan had, but just, you know, scalp irritation, itching, things like that. People call a 1-800 number and they may complain about itching. That is not the case of what we have here. But this is a product that has been used millions, if not billions of times. And you can't just look at a consumer complaint hotline and say, well, because the people who call to complain are complaining about scalp itchiness, that you have some sort of non-conclusory evidence that creates a genuine issue of material fact. I think, you know, that's the biggest issue here is, is there enough to overcome the summary judgment hurdle? And I'd be hard-pressed to think of a products liability case or a toxic tort case that has less evidence than this. There's no toxicology. There's no epidemiology. The expert who considered these facts said, I cannot rule this substance in. And if we get to cross the summary judgment line in that case, it's hard to imagine a case where a defendant wins in a products liability case. What would the expert have had to say? What was the minimum the expert had to say in your mind? That this product can be ruled in. He refused to say that. I mean, he was asked point blank repeatedly, can you rule this product in? And he said no. He also said he can't rule it out. So he says it's possible. Right. But anything's possible. Not anything. No, I think he ruled a lot of things out. Well, yeah, he did rule things out, but he didn't rule it in and was explicit about that. I mean, you know, we're products liability lawyers and we deal with this all the time where experts come into court and they say, you know, I think this caused this. I think this exacerbated this. And we're not talking about exacerbation. If he said, I think this product exacerbated her injury, that's enough. He refused to do that. I mean, it has to be reliable. It has to meet the standards of 702, of course, and we don't think it did that. But he certainly could have stated that you have a product that exacerbated her injury, and he refused to do that. If the panel has no further questions, I will yield the remainder of my time. He did say formaldehyde causes hair follicle issues. Yes, that is his one and only statement, that he did no research to support and was told to assume that she was exposed to this product. Formaldehyde, that's not enough to support a general causation opinion. It's not. Again, no talks, no epi, no scientific research. But the district court's opinion functionally assumes general causation and relies on specific causation. You know, let's suppose, and I don't think this is the case, that formaldehyde, in fact, caused cancer. And here we're not dealing with formaldehyde. We're dealing with what is considered to be potentially a formaldehyde donor, which is a very different scientific issue. But say it causes cancer. That has nothing to do with whether it exacerbated her preexisting hair loss to total body hair loss. And that's the link that is never made here. Do you think that the general causation question is part of the defective product question? In other words, it's a defective product because it contains something that is capable of doing this? I'm just trying to get a formal kind of framework for a products liability case that also has a toxic tort aspect to it. Is it part of that design defect or manufacturing defect inquiry? You know, I think that's an interesting question. And certainly I think it could fit within there, but it's also an independent part because you can't have, especially in MDL matters, you're going to consider general causation first because you need to have that as a threshold matter, and that's independent of defect because defect requires a lot more than general causation, as you know. You can't just show that a product causes harm. You have to show defect as well. And so courts may very well consider general causation separately and independently from the defect analysis. But it seems to me that if you collapse the two, but then you use a case like Bradley and say, well, you don't necessarily need an expert in all products cases, but that case, I mean, there are obvious, like the case I gave before, there are obvious cases where the product is involved and did something that doesn't look right, I guess. I'm wondering if that's possible. Like you don't, obviously you use shampoo, you don't expect your hair to fall out. Is that enough? Is that enough in a products case? I think what you just described is temporality alone. You use shampoo, does your hair fall out afterwards? Well, does your hair fall out because of something else? You ate dinner that day. You have to have something other than, hey, here is a product, I was exposed to it, and ergo, the product must have caused it. What if I could testify that every time I put the shampoo on, I could pull a clump of my hair out? That's not the case here. No, I recognize, but I'm just asking because that is temporal in nature. I can testify to it. Why can't a jury conclude, look, I put the shampoo only in one spot one time, and that's the only hair that came out? I think that's an interesting question, and frankly I'd consider it under the Bradford Hill factors. Is that enough under Bradford Hill? I would say probably not because you would need more than that, but that's the analysis that I would run it through. Thank you, Your Honors. Please affirm the district court. Thank you. I think it's important to note that Judge Varland determined that Johnson & Johnson was not entitled to summary judgment on the question of whether the product was defective or unreasonably dangerous. He begins his opinion this way, DMDM is a known formaldehyde donor linked to formaldehyde, which is a known carcinogen and a hair follicle irritant. Products dangerous or defective? That question of whether the product is unreasonably dangerous or defective is one under the TPLA, 2928.103a, can be determined in one of two ways. Consumer expectation test, every time I use the shampoo my hair falls out, or the prudent manufacturing test. Normally the prudent manufacturing test, as Bradley shows, but not always, requires expert proof because the product is just too complex. Think of the difference between seat belt and asbestos. So this is where the inquiry into the substantive law and whether or not experts should be or shouldn't, that's where it should have ended, with Judge Varland's conclusion that the product is defective or unreasonably dangerous. That's it. None of these cases, none of the decisional law cited by Varland, none that I could find, states that Tennessee has a substantive requirement that an expert say that a product was a substantial factor in the injury. My friend says, yes, but there has to be, in a complex medical case, some expert link between the offending product and the injury. Well, I agree. I don't know if that's a substantive requirement, but in this case it doesn't really matter because we have that. Schwartz gives us that. Schwartz says, not just this could have been the case. He says that Cindy Buchanan's preexisting alopecia areata, which turned into alopecia universalis, total alopecia, total hair loss, was either triggered, as in the reason for, was the DMDM, 100%, no other cause, but at the very least, he says, it contributed to that exacerbation. I thought he said could have contributed. Pardon? I thought he said could have contributed. He says cannot be ruled out as the cause or, at the very least, as a contributing factor to this condition. Now, this is where Adaubert can't be ruled out. That's preceding the clause. What he says is that I don't think he's saying... But he says I can't rule it out. He should have affirmatively ruled it in. I think, I wish he could have worded it differently, but I think what he's saying is that I cannot rule out that it was the cause, underscoring the, the only, but it most certainly was a contributing factor. Now, these are things that you worm out at Adaubert hearings, not just from a discovery deposition that's five hours long and an expert's tired and probably frustrated to be there any longer. You call him into court and you have an evidentiary hearing and you determine whether his opinion is up to snuff, but that's only if we actually require this to begin with, which we do not, and it doesn't matter if we're talking about Tennessee substantive law or federal common law. It doesn't matter. It's not a requirement. Counsel, your time's up. Thank you, Your Honor. We'll wrap up. Thank you. Anything further? All right. Thank you, Counsel, very much. The case will be submitted.